UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  7/14/2021
```

------------------------------------------------------------------------X
                                         :

ALLSTAR MARKETING GROUP, LLC,      :

              Plaintiff,     :

                           :             21-cv-5856 (LJL)

       -v-                    :               ORDER

                           :

ALLSTAR_PLACE, AMGARI66, AT-BENADO,  :
AYESMADUSANK_0, BABY_HOME29,    :
BARDUGO007, BINARA_ONLINESTORE,  :
BLOOMSTORE-24, BUSY-SALES-4U,    :
CENGANMEN663, CHANIZSHOP,      :
CIGOLTFOS_HOLDING, CITY_CEYLON,   :
D_WHITE_STORE, DINU_SUPPLIERS,    :
DREAMSTORE-3, ECTREND984, ELOUKILI_STORE, :
ENTERSHOP1320, ERANGAONLINEMART98,  :
FENGATUQIANG7788, GAMAGEE-SHOP, HNIA22, :
ISURU2009, KETTY_LAVI, KNICKKNACK_MART, :
LIYACHAN, MOHLAB_86, POWER_STORE98,  :
PRINCE_N, REAF_59, SANDARU_E-MART,   :
SERANDIB_CHOICE1992, SHAN1999-9,    :
SHOP_FOR_LIFE_ELFE, SHOPI_MART,    :
SPICE_TECH1, SPIROIA_208198, TC_KNIGHT, :
THISBUY, TOYMAX_20, TRAFFICKZ, TUR68-  :
STORE, USA*DEALS1, XUZHIJIESTORE-1,   :
Z_AND_C-SHOP, ZINE8893 and ZONDZON-STORE, :

                           :

             Defendants.     :

                           :
------------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Plaintiff submitted an application to the Court for a Temporary Restraining Order ("TRO") on July 8, 2021. The TRO, as originally drafted, would have bound Defendants. It also would have bound a group of entities identified collectively as either Financial Institutions or Third Party Service Providers. The Financial Institutions were defined to include "banks, financial institutions, credit card companies and payment processing agencies, such as PayPal Inc. . . . that engage in the processing or transfer of money and/or real or personal property of Defendants. The Third Party Service Providers were defined to include "[o]nline marketplace platforms, including, without limitation, those owned and operated, directly or indirectly by eBay . . . through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them . . . sell and/or otherwise deal in

Counterfeit Products . . ." The application in support of the TRO contained an affidavit with specific facts clearly showing that Plaintiff would suffer immediate and irreparable injury if notice was required to the Defendants and setting forth the reasons why notice should not be required. *See* Fed. R. Civ. P. 65(b); Futterman Decl. ¶¶ 14, 26-30.  It did not provide any basis for the Court to enter a TRO against the Financial Institutions or Third Party Service Providers without providing notice to them.

The Court held an ex parte hearing on the application on July 9, 2021.  At the hearing, the Court raised two specific concerns with Plaintiff's application that were foreshadowed in the Court's earlier opinion in *Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348 (S.D.N.Y. 2020), with which Plaintiff's counsel was familiar.  The first was that the proposed TRO, on its face, appeared to exceed the scope of a TRO as authorized by Rule 65(d)(2).  That rule provides that a TRO may bind "only the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)."  Fed. R. Civ. P. 65(d)(2).  The application did not set forth evidence that each (or perhaps any) of the persons identified as Financial Institutions or Third Party Service Providers were in "active concert or participation" with Defendants.  To the extent that any of them were, the language of the TRO swept too broadly, covering, as it did, every Financial Institution and Third Party Service Provider.  Second, the TRO would have had the Court bind even the Financial Institutions and Third Party Service Providers who were not in active concert or participation with Defendants to various obligations, on pain of contempt if they did not comply, without providing them notice and an opportunity to defend themselves.  At the hearing, counsel for Plaintiff asked to submit a supplemental brief addressing the Court's concerns by July 14, 2021.  The Court granted Plaintiff leave to do so and specifically invited Plaintiff to address any respects in which *Spin Master* was in error.  The Court also orally ordered that the transcript of the hearing be maintained under seal.

On July 13, 2021, in lieu of briefing, Plaintiff submitted to the Court a revised proposed order to show cause.  That order addressed most of the Court's concerns.  In particular, it defined the persons bound by the TRO to be Defendants and  "all persons in active concert and participation with Defendants, who receive actual notice of this Order, including Third Party Service Providers and Financial Institutions."  Plaintiff's modifications to the TRO addressed the Court's concerns about entering a TRO that could exceed its authority under Rule 65.  *See also McGraw Hill LLC v. Doe*, 20-cv-356, Dkt. Nos. 36 & 37 (S.D.N.Y. Feb. 12, 2020) (striking language from a proposed preliminary injunction that would have bound "not only the persons specifically identified in Rule 65(d) but also 'service providers to Defendants who receive[d] actual notice of [the] injunction'").  It permits any particular Third Party Service Provider or Financial Institution to argue that they are not "in active concert and participation" as that language is understood in the case law.  *See Spin Master Ltd.*, 463 F. Supp. 3d at 380  ("This Court cannot prejudge now—before knowing the facts—whether any particular financial institution or third party service provider is necessarily and by definition an aider and abettor.").  By limiting the group of Third Party Service Providers or Financial Institutions who are bound, it also substantially addressed the Court's concern regarding the ex parte nature of the application.

The proposed order to show cause, however, still would have bound Third Party Service Providers and Financial Institutions—without any limitation to those in active concert or participation—to provide discovery upon being served with a copy of the Court's order.  No

subpoena would have been necessary.  In that respect, the new proposed order still did not sufficiently address the Court's concerns.  It would have had the Court require any Third Party Service Provider or Financial Institution to comply with the order on pain of contempt, without any showing that the Third Party Service Provider or Financial Institution was in league with Defendants.   A Third Party Service Provider or Financial Institution who failed to comply might have been able to argue that it did not willfully violate a Court order or that it should not be subject to contempt sanctions.  But it would not be able to move to quash or to argue it was not subject to Court order.   The Court has revised the language of the TRO to address these concerns.  It still gives Plaintiff the right to expedited discovery and to obtain documents from Third Party Service Providers and Financial Institutions, but it does so in a different fashion. Plaintiff will have the authority to serve subpoenas on Third Party Service Providers and Financial Institutions with an accelerated return date, but the obligation of those entities to respond will be based upon the subpoenas and not upon an independent court order.  If the Financial Institutions or Third Party Service Providers object to the subpoenas, they may move to quash as long as they do so timely before a response is due.  They will not be relegated to defending against contempt sanctions.

Finally, the Court has stricken the language permitting alternative service by electronic means on the "Third Party Service Providers and Financial Institutions."  To the extent service was intended to make clear that such entities—when "in active concert"—would be bound by the TRO, formal service is unnecessary.  Federal Rule of Civil Procedure 65(d)(2) binds those "who are in active concert or participation" with the defendants and who "receive actual notice" whether "by personal service or otherwise."  To the extent it is intended to do something more and address formal service (and not just notice), the request is unsupported.  *See Spin Master*, 463 F. Supp. 3d at 383 (observing that the plaintiff had presented "no justification . . . for not serving [Financial Institutions or Third Party Service Providers] as provided in the Federal Rules of Civil Procedure" and that "[a]ccordingly, this aspect of the proposed . . . injunction will be denied.").

The Court has attached as an Appendix to this Order the July 13 proposed TRO as submitted by Plaintiff redlined to reflect the Court's edits.

SO ORDERED.

Dated: July 14, 2021
       New York, New York                          _____
                                                   LEWIS J. LIMAN
                                                   United States District Judge

3

Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle Futterman (DY 4228)
dfutterman@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:    (212) 292-5390
Facsimile:    (212) 292-5391
Attorneys for Plaintiff
Allstar Marketing Group, LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLSTAR MARKETING GROUP, LLC,<br><br>*Plaintiff*<br><br>v.<br><br>ALLSTAR_PLACE, AMGARI66, AT-BENADO, AYESMADUSANK_0, BABY_HOME29, BARDUGO007, BINARA_ONLINESTORE, BLOOMSTORE-24, BUSY-SALES-4U, CENGANMEN663, CHANIZSHOP, CIGOLTFOS_HOLDING, CITY_CEYLON, D_WHITE_STORE, DINU_SUPPLIERS, DREAMSTORE-3, ECTREND984, ELOUKILI_STORE, ENTERSHOP1320, ERANGAONLINEMART98, FENFATUQIANG7788, GAMAGEE-SHOP, HNIA22, ISURU2009, KETTY_LAVI, KNICKKNACK_MART, LIYACHAN, MOHLAB_86, POWER_STORE98, PRINCE_N, REAF_59, SANDARU_E-MART, SERANDIB_CHOICE1992, SHAN1999-9, SHOP_FOR_LIFE_ELFE, SHOPI_MART, SPICE_TECH1, SPIROIA_208198, TC_KNIGHT , THISBUY, TOYMAX_20, TRAFFICZ, TUR68-STORE, USA*DEALS1, XUZHIJIESTORE-1, Z_AND_C-SHOP, ZINE8893 and ZONDZON-STORE,<br><br>*Defendants* | **Civil Case No.: 21-cv-5856 (LJL)**<br><br>**[PROPOSED]**<br>**1) TEMPORARY RESTRAINING ORDER; 2) ORDER RESTRAINING MERCHANT STOREFRONTS AND DEFENDANTS' ASSETS WITH THE FINANCIAL INSTITUTIONS; 3) ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; 4) ORDER AUTHORIZING BIFURCATED AND ALTERNATIVE SERVICE; AND 5) ORDER AUTHORIZING EXPEDITED DISCOVERY**<br><br>**FILED UNDER SEAL** |

**GLOSSARY**

| Term | Definition |
|---|---|
| **Plaintiff or Allstar** | Allstar Marketing Group, LLC |
| **Defendants** | allstar_place, amgari66, at-benado, ayesmadusank_0, baby_home29, bardugo007, binara_onlinestore, bloomstore-24, busy-sales-4u, cenganmen663, chanizshop, cigoltfos_holding, city_ceylon, d_white_store, dinu_suppliers, dreamstore-3, ectrend984, eloukili_store, entershop1320, erangaonlinemart98, fenfatuqiang7788, gamagee-shop, hnia22, isuru2009, ketty_lavi, knickknack_mart, liyachan, mohlab_86, power_store98, prince_n, reaf_59, sandaru_e-mart, serandib_choice1992, shan1999-9, shop_for_life_elfe, shopi_mart, spice_tech1, spiroia_208198, tc_knight , thisbuy, toymax_20, trafficz, tur68-store, usa*deals1, xuzhijiestore-1, z_and_c-shop, zine8893 and zondzon-store |
| **Jay At Play** | Jay At Play International Hong Kong Limited d/b/a Jay At Play |
| **eBay** | eBay.com, a San Jose, California-based online marketplace and e-commerce platform owned by eBay Inc., a Delaware corporation, that allows manufacturers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale and/or sell in what it characterizes as either auction-style or fixed-price formats and ship their retail products, which, upon information and belief, originate from China, among other locations, directly to consumers worldwide and specifically to consumers residing in the U.S., including in New York |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |
| **New York Address** | 244 Madison Ave, Suite 411, New York, New York 10016 |
| **Complaint** | Plaintiff's Complaint |
| **Application** | Plaintiff's *Ex Parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery |
| **De Marco Dec.** | Declaration of Jennifer De Marco in Support of Plaintiff's Application |
| **Futterman Dec.** | Declaration of Danielle S. Futterman in Support of Plaintiff's Application |
| **Happy Nappers Marks** | U.S. Trademark Registration Nos.: 6,102,208 for |

i

| | |
|---|---|
| | "HAPPY NAPPERS" for goods in Class 20 and 24; and 3,998,335 for "HAPPY NAPPERS" for goods in Class 28 |
| **Happy Nappers Works** | U.S. Copyright Reg. Nos.: VA 2-227-806 covering Shak the Shark; VA 2-227-789 covering Arianna the White Unicorn; VA 2-227-807 covering Duncan the Dragon; VA 2-227-808 covering Lilly the Lady Bug; VA 2-227-810 covering Monique the Pink Unicorn; VA 2-227-816 covering Kodiak the Grey Husky; VA 2-227-818 covering Dusty the Yellow Dog; and VA 2-227-820 covering Charlotte the Pink Kitty |
| **Happy Nappers Products** | A soft plush pillow toy that when unzipped, expands into a comfy sleep sack |
| **Counterfeit Products** | Products bearing or used in connection with the Happy Nappers Marks and/or Happy Nappers Works, and/or products in packaging and/or containing labels and/or hang tags bearing the Happy Nappers Marks and/or Happy Nappers Works, and/or bearing or used in connection with marks and/or artwork that are confusingly or substantially similar to the Happy Nappers Marks and/or Happy Nappers Works and/or products that are identical or confusingly or substantially similar to the Happy Nappers Products |
| **Infringing Listings** | Defendants' listings for Counterfeit Products |
| **User Accounts** | Any and all websites and any and all accounts with online marketplace platforms such as eBay, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or Merchant Storefront(s) (whether said account is located in the U.S. or abroad) |

| | |
|---|---|
| **Financial Institutions** | Any banks, financial institutions, credit card companies and payment processing agencies, such as PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), PingPong Global Solutions, Inc. ("PingPong") and other companies or agencies that engage in the processing or transfer of money and/or real or personal property of Defendants |
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, those owned and operated, directly or indirectly by eBay, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise |

On this day, the Court considered Plaintiff's *ex parte* application for the following: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts and Defendants' Assets with the Financial Institutions; 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery against Defendants, Third Party Service Providers and Financial Institutions in light of Defendants' intentional and willful offerings for sale and/or sales of Counterfeit Products.[1]  A complete list of Defendants is attached hereto as **Schedule A**, which also includes links to Defendants' Merchant Storefronts and Infringing Listings.  Having reviewed the Application, Declarations of Jennifer De Marco and Danielle S. Futterman, along with exhibits attached thereto and other evidence submitted in support thereof, the Court makes the following findings of fact and conclusions of law:

## FACTUAL FINDINGS & CONCLUSIONS OF LAW

1.      Plaintiff is a leading developer, producer, marketer, and distributor of quality, innovative consumer products that Plaintiff promotes and sells throughout the United States and the world through major retailers and well-known mass retail outlets, including, but not limited to: Wal-Mart, Target and Bed Bath & Beyond, as well as through its retail customers' websites and a network of international distributors, among other channels of trade;

2.      One of Plaintiff's most popular and successful products is Happy Nappers, a soft plush pillow toy that when unzipped, expands into a comfy sleep sack. With eighteen different characters and two sizes to choose from, the Happy Nappers Products are the go anywhere friends;

3.      The Happy Nappers Products have achieved great success and generally retail for between $39.99-120.99;

---

[1] Where a defined term is referenced herein and not defined herein, the defined term should be understood as it is defined in the Glossary.

4.      Plaintiff was granted the exclusive license to use the Happy Nappers Marks from Jay At Play International Hong Kong Limited d/b/a Jay At Play, including U.S. Trademark Registration Nos.: 6,102,208 for "HAPPY NAPPERS" for goods in Class 20 and 24; and 3,998,335 for "HAPPY NAPPERS" for goods in Class 28;

5.      The Happy Nappers Marks are currently in use in commerce in connection with the Happy Nappers Products;

6.      In addition, Plaintiff was granted the exclusive license to use the Happy Nappers Works from Jay At Play, including U.S. Copyright Reg. Nos.: VA 2-227-806 covering Shak the Shark; VA 2-227-789 covering Arianna the White Unicorn; VA 2-227-807 covering Duncan the Dragon; VA 2-227-808 covering Lilly the Lady Bug; VA 2-227-810 covering Monique the Pink Unicorn; VA 2-227-816 covering Kodiak the Grey Husky; VA 2-227-818 covering Dusty the Yellow Dog; and VA 2-227-820 covering Charlotte the Pink Kitty;

7.      Defendants are manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale or Counterfeit Product through Defendants' User Accounts and Merchant Storefronts with eBay (*see* **Schedule A** for links to Defendants' Merchant Storefronts and Infringing Listings);

8.      eBay is an online marketplace and e-commerce platform that allows manufacturers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale and/or sell and ship their retail products originating from China, among other locations, directly to consumers worldwide and specifically to consumers residing in the U.S., including New York;

9.      Defendants are not, nor have they ever been, authorized distributors or licensees of the Happy Nappers Products.  No one other than Jay At Play, Plaintiff, its authorized licensees and distributors are authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the Happy Nappers Marks or Happy Nappers Works;

2

10.     Plaintiff is likely to prevail on its Lanham Act, copyright and related common law claims at trial;

11.     As a result of Defendants' infringements, Plaintiff, as well as consumers, are likely to suffer immediate and irreparable losses, damages and injuries before Defendants can be heard in opposition, unless Plaintiff's Application for *ex parte* relief is granted:

    a.  Defendants have offered for sale and sold substandard Counterfeit Products that infringe the Happy Nappers Works and/or Happy Nappers Marks;

    b.  Plaintiff has well-founded fears that more Counterfeit Products will appear in the marketplace; that consumers may be misled, confused and disappointed by the quality of these Counterfeit Products, resulting in injury to Plaintiff's reputation and goodwill; and that Plaintiff may suffer loss of sales for its Happy Nappers Products; and

    c.  Plaintiff has well-founded fears that if it proceeds on notice to Defendants on this Application, Defendants will: (i) secret, conceal, destroy, alter, sell-off, transfer or otherwise dispose of or deal with Counterfeit Products or other goods that infringe the Happy Nappers Works and/or Happy Nappers Marks, the means of obtaining or manufacturing such Counterfeit Products, and records relating thereto that are in their possession or under their control, (ii) inform their suppliers and others of Plaintiff's claims with the result being that those suppliers and others may also secret, conceal, sell-off or otherwise dispose of Counterfeit Products or other goods infringing the Happy Nappers Works and/or Happy Nappers Marks, the means of obtaining or manufacturing such Counterfeit Products, and records relating thereto that are in their possession or under their control, (iii) secret, conceal, transfer or otherwise dispose of their ill-gotten proceeds from its sales of Counterfeit Products or other goods infringing the Happy Nappers Works and/or Happy Nappers Marks and records

3

relating thereto that are in their possession or under their control and/or (iv) open new User Accounts and Merchant Storefront under new or different names and continue to offer for sale and sell Counterfeit Products with little to no consequence;

12.     The balance of potential harm to Defendants of being prevented from continuing to profit from their illegal and infringing activities if a temporary restraining order is issued is far outweighed by the potential harm to Plaintiff, its business, the goodwill and reputation built up in and associated with the Happy Nappers Works and/or Happy Nappers Marks and to its reputations if a temporary restraining order is not issued;

13.     Public interest favors issuance of the temporary restraining order in order to protect Plaintiff's interests in and to its Happy Nappers Works and/or Happy Nappers Marks, and to protect the public from being deceived and defrauded by Defendants' passing off of their substandard Counterfeit Products as Happy Nappers Products;

14.     Plaintiff has not publicized its request for a temporary restraining order in any way;

15.     Service on Defendants via electronic means is reasonably calculated to result in proper notice to Defendants;

16.     If Defendants are given notice of the Application, they are likely to secret, conceal, transfer or otherwise dispose of their ill-gotten proceeds from their sales of Counterfeit Products or other goods infringing the Happy Nappers Works and/or Happy Nappers Marks.  Therefore, good cause exists for granting Plaintiff's request for an asset restraining order.  It typically takes the Financial Institutions a minimum of five (5) days after service of the Order to locate, attach and freeze Defendants' Assets and/or Defendants' Financial Accounts and it is anticipated that it will take the Third Party Service Providers a minimum of five (5) days to freeze Defendants' Merchant Storefronts.  As such, the Court allows enough time for Plaintiff to serve the Financial Institutions and Third Party Service Providers with this Order, and for the Financial Institutions

4

and Third Party Service Providers to comply with the Paragraphs I(B)(1) through I(B)(2) and I(C)(1) of this Order, respectively, before requiring service on Defendants;

17.     Similarly, if Defendants are given notice of the Application, they are likely to destroy, move, hide or otherwise make inaccessible to Plaintiff the records and documents relating to Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Counterfeit Products.  Therefore, Plaintiff has good cause to be granted expedited discovery.

## **ORDER**

Based on the foregoing findings of fact and conclusions of law, Plaintiff's Application is hereby **GRANTED** as follows:

### I.     Temporary Restraining Order

A.  IT IS HEREBY ORDERED, as sufficient cause has been shown, that Defendants are hereby restrained and enjoined from engaging in any of the following acts or omissions for fourteen (14) days from the date of this order, and for such further period as may be provided by order of the Court:

1)      manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Counterfeit Products, or any other products bearing the Happy Nappers Works and/or Happy Nappers Marks and/or marks and/or artwork that are confusingly and/or substantially similar to, identical to and constitute a counterfeiting or infringement of the Happy Nappers Works and/or Happy Nappers Marks;

2)      directly or indirectly infringing in any manner Plaintiff's Happy Nappers Works and/or Happy Nappers Marks;

3)      using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Happy Nappers Works and Happy Nappers Marks, to identify any goods or service not authorized by Plaintiff;

4)      using Plaintiff's Happy Nappers Works and/or Happy Nappers Marks and/or any other marks that are confusingly similar to the Happy Nappers Marks and/or any other artwork that is substantially similar to the Happy Nappers Works, on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, offering for sale, selling and/or otherwise dealing in Counterfeit Products;

5)      using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities and Plaintiff;

6)      secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products and/or (ii) any computer files, data, business records, documents or any other records or evidence relating to their User Accounts, Merchant Storefronts or Defendants' Assets and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

7)      effecting assignments or transfers, forming new entities or associations, or creating and/or utilizing any other platform, User Account, Merchant Storefront or any other

6

means of importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products for the purposes of circumventing or otherwise avoiding the prohibitions set forth in this Order; and

8) knowingly instructing any other person or business entity to engage in any of the activities referred to in subparagraphs I(A)(1) through I(A)(7) above and I(B)(1) through I(B)(2) and I(C)(1) below.

B. IT IS HEREBY ORDERED, as sufficient cause has been shown, that all persons in active concert and participation with Defendants, who receive actual notice of this Order, including Third Party Service Providers and Financial Institutions who satisfy those requirements and are identified in this Order are hereby restrained and enjoined from engaging in any of the following acts or omissions for fourteen (14) days from the date of this order, and for such further period as may be provided by order of this Court:

1) secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying Defendants' Assets from or to Defendants' Financial Accounts until further ordered by this Court;

2) secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with any computer files, data, business records, documents or any other records or evidence relating to Defendants' Assets and Defendants' Financial Accounts; and

3) knowingly instructing, aiding or abetting any person or business entity in engaging in any of the activities referred to in subparagraphs I(A)(I) through I(A)(7) and I(B)(1) through I(B)(2) above and I(C)(1) below.

C.  IT IS HEREBY ORDERED, as sufficient cause has been shown, that all persons in active concert and participation with Defendants who receive actual notice of this Order, including Third Party Service Providers who satisfy those requirements and are identified in this Order are hereby restrained and enjoined from engaging in any of the following acts or omissions for fourteen (14) days from the date of this order, and for such further period as may be provided by order of this Court:

1)  within five (5) days after receipt of service of this Order, providing services to Defendants, Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts; and

2)  knowingly instructing, aiding, or abetting any other person or business entity in engaging in any of the activities referred to in subparagraphs I(A)(1) through I(A)(4), I(B)(1) through I(B)(2) and I(C)(1) above.

## II.    Order to Show Cause Why A Preliminary Injunction Should Not Issue And Order Of Notice

A.  Defendants are hereby ORDERED to show cause before this Court in Courtroom _____ of the United States District Court for the Southern District of New York at 500 Pearl Street/40 Foley Square, New York, New York on _____, 2021 at  _____  __.m. or at such other time that this Court deems appropriate, why a preliminary injunction, pursuant to Fed. R. Civ. P. 65(a), should not issue.

B.  IT IS FURTHER ORDERED that opposing papers, if any, shall be filed electronically with the Court and served on Plaintiff's counsel by delivering copies thereof to the office of Epstein Drangel LLP at 60 East 42nd Street, Suite 2520, New York, NY 10165, Attn: Jason M. Drangel on or before_____, 2021.  Plaintiff shall file any Reply papers on or before _____, 2021.

8

C.  IT IS FURTHER ORDERED that Defendants are hereby given notice that failure to appear at the show cause hearing scheduled in **Paragraph II(A)** above may result in the imposition of a preliminary injunction against them pursuant to Fed. R. Civ. P. 65, which may take effect immediately upon the expiration of this Order, and may extend throughout the length of the litigation under the same terms and conditions set forth in this Order.

### III.    Asset Restraining Order

A.  IT IS FURTHER ORDERED pursuant to Fed. R. Civ. P. 64 and 65 and N.Y. C.P.L.R. 6201 and this Court's inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief, as sufficient cause has been shown, that within five (5) days of receipt of service of this Order, the Financial Institutions shall locate and attach Defendants' Financial Accounts and shall provide written confirmation of such attachment to Plaintiff's counsel.

### IV.    Order Authorizing Bifurcated and Alternative Service by Electronic Means

A.  IT IS FURTHER ORDERED pursuant to Fed. R. Civ. P. 4(f)(3), as sufficient cause has been shown, that service may be made on, and shall be deemed effective as to Defendants if it is completed by the following means:

1)  delivery of: (i) PDF copies of this Order together with the Summons and Complaint, or (ii) a link to a secure website (including NutStore, a large mail link created through Rmail.com and via website publication through a specific page dedicated to this Lawsuit accessible through ipcounselorslawsuit.com) where each Defendant will be able to download PDF copies of this Order together with the Summons and Complaint, and all papers filed in support of Plaintiff's Application seeking this Order to Defendants' e-mail addresses to be determined after having been identified by eBay pursuant to **Paragraph V(C)**.

9

B. IT IS FURTHER ORDERED, as sufficient cause has been shown, that such alternative service by electronic means ordered herein shall be deemed effective as to Defendants, ~~Third Party Service Providers and Financial Institutions~~ through the pendency of this action.

C. IT IS FURTHER ORDERED, as sufficient cause has been shown, that such alternative service by electronic means ordered herein shall be made within five (5) days of the Financial Institutions and Third Party Service Providers' compliance with **Paragraphs III(A)** and **V(C)** of this Order.

D. IT IS FURTHER ORDERED, as sufficient cause has been shown, that the Clerk of the Court shall issue a single original summons directed to all Defendants as listed in an attachment to the summons that will apply to all Defendants.

E. IT IS FURTHER ORDERED, as sufficient cause has been shown, that service may be made and shall be deemed effective as to the following if it is completed by the below means:

    1) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where PayPal Inc. will be able to download a PDF copy of this Order via electronic mail to PayPal Legal Specialist at EEOMALegalSpecialist@paypal.com;

    2) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Payoneer Inc. will be able to download a PDF copy of this Order via electronic mail to Payoneer Inc.'s Customer Service Management at customerservicemanager@payoneer.com and Edward Tulin, counsel for Payoneer Inc., at Edward.Tulin@skadden.com; and

    3) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where PingPong Global Solutions Inc. will be able to download a PDF copy of this Order via electronic mail to PingPong Global Solutions Inc.'s Legal Department legal@pingpongx.com.

### Order Authorizing Expedited Discovery

A. IT IS FURTHER ORDERED, as sufficient cause has been shown, that:

1) Within fourteen (14) days after receiving service of this Order, each Defendant shall serve upon Plaintiff's counsel a written report under oath providing:

   a.   their true name and physical address;

   b.   the name and location and URL of any and all websites that Defendants own and/or operate and the name, location, account numbers and URL for any and all User Accounts and Merchant Storefronts on any Third Party Service Provider platform that Defendants own and/or operate;

   c.   the complete sales records for any and all sales of Counterfeit Products, including but not limited to number of units sold, the price per unit, total gross revenues received (in U.S. dollars) and the dates thereof;

   d.   the complete sales records for any and all sales of Counterfeit Products made to consumers located in New York, including but not limited to number of units sold, the price per unit, total gross revenues received (in U.S. dollars) and the dates thereof;

   e.   the account details for any and all of Defendants' Financial Accounts, including, but not limited to, the account numbers and current account balances; and

   f.   the steps taken by each Defendant, or other person served to comply with **Section I**, above.

2) Plaintiff may serve interrogatories pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure as well as Local Civil Rule 33.3 of the Local Rules for the Southern and Eastern Districts of New York and Defendants who are served with this Order shall provide written responses under oath to such interrogatories within fourteen (14) days of service to Plaintiff's counsel.

3) Plaintiff may serve requests for the production of documents pursuant to Fed. R. Civ. P. 26 and 34, and Defendants who are served with this Order and the requests for the production

11

of documents shall produce all documents responsive to such requests within fourteen (14) days of service to Plaintiff's counsel.

B.  IT IS FURTHER ORDERED, as sufficient cause has been shown, ~~that within five (5) days of receipt of service of this Order~~Plaintiff may serve subpoenas on the Financial Institutions ~~served with this Order shall~~to identify any and all of Defendants' Financial Accounts, and provide Plaintiff's counsel with a summary report containing account details for any and all such accounts, which shall include, at a minimum, identifying information for Defendants, including contact information for Defendants (including, but not limited to, mailing addresses and e-mail addresses), account numbers and account balances for any and all of Defendants' Financial Accounts and ~~confirmation of said~~confirm compliance with this Order, which subpoenas may be made returnable fourteen (14) days after service.

C.  IT IS FURTHER ORDERED, as sufficient cause has been shown, ~~that within five (5) days of receipt of service of this Order,~~Plaintiff may serve subpoenas on the Third Party Service Providers ~~served with this Order shall~~to identify any and all of Defendants' User Accounts and Merchant Storefronts, and provide Plaintiff's counsel with a summary report containing account details for any and all User Accounts and Merchant Storefronts, which shall include, at a minimum, identifying information for Defendants and Defendants' User Accounts and Defendants' Merchant Storefronts, contact information for Defendants (including, but not limited to, mailing addresses and e-mail addresses) and ~~confirmation of said~~confirm compliance with this Order, which subpoenas may be made returnable fourteen (14) days after service.

D.  IT IS FURTHER ORDERED, as sufficient cause has been shown, that:

   1)  ~~Within fourteen (14) days of receiving actual notice of this Order, all~~The subpoenas served on the Financial Institutions ~~who are served with this Order shall provide Plaintiff's counsel~~may require production within fourteen (14) days after receipt, of all

documents and records in their possession, custody or control (whether located in the U.S. or abroad) relating to any and all of Defendants' Financial Accounts, including, but not limited to, documents and records relating to:

a.   account numbers;

b.   current account balances;

c.   any and all identifying information for Defendants, Defendants' User Accounts and Defendants' Merchant Storefronts, including, but not limited to, names, addresses and contact information;

d.   any and all account opening documents and records, including, but not limited to, account applications, signature cards, identification documents and if a business entity, any and all business documents provided for the opening of each and every of Defendants' Financial Accounts;

e.   any and all deposits and withdrawals during the previous year from each and every one of Defendants' Financial Accounts and any and all supporting documentation, including, but not limited to, deposit slips, withdrawal slips, cancelled checks and account statements; and

f.   any and all wire transfers into each and every one of Defendants' Financial Accounts during the previous year, including, but not limited to, documents sufficient to show the identity of the destination of the transferred funds, the identity of the beneficiary's bank and the beneficiary's account number.

E.   IT IS FURTHER ORDERED, as sufficient cause has been shown, that:

1)   ~~Within fourteen (14) days of receipt of service of this Order,~~The subpoenas served on the Third Party Service Providers ~~served with this Order shall provide to Plaintiff's counsel~~may require production within fourteen (14) days after receipt, of all documents and records in its possession, custody or control (whether located in the U.S. or abroad)

relating to Defendants' User Accounts and Defendants' Merchant Storefronts, including, but not limited to, documents and records relating to:

a.  any and all User Accounts and Defendants' Merchant Storefronts and account details, including, without limitation, identifying information and account numbers for any and all User Accounts and Defendants' Merchant Storefronts that Defendants have ever had and/or currently maintain with the Third Party Service Providers that were not previously provided pursuant to Paragraph V(C);

b.  the identities, location and contact information, including any and all e-mail addresses of Defendants that were not previously provided pursuant to Paragraph V(C);

c.  the nature of Defendants' businesses and operations, methods of payment, methods for accepting payment and any and all financial information, including, but not limited to, information associated with Defendants' User Accounts and Defendants' Merchant Storefronts, a full accounting of Defendants' sales history and listing history under such accounts and Defendants' Financial Accounts with any and all Financial Institutions associated with Defendants' User Accounts and Defendants' Merchant Storefronts; and

d.  Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Counterfeit Products, or any other products bearing the Happy Nappers Marks and/or Happy Nappers Works and/or marks and/or artwork that are confusingly and/or substantially similar to, identical to and constitute an infringement of the Happy Nappers Marks and/or Happy Nappers Works.

**V.  <u>Security Bond</u>**

14

A. IT IS FURTHER ORDERED that Plaintiff shall place security in the amount of ~~$5,000~~ Dollars ~~(          )~~ (Five Thousand) with the Court which amount is determined adequate for the payment of any damages any person may be entitled to recover as a result of an improper or wrongful restraint ordered hereunder.

## VI.   <u>Sealing Order</u>

A. IT IS FURTHER ORDERED that Plaintiff's Complaint and exhibits attached thereto, and Plaintiff's *ex parte* Application and the Declarations of Jennifer De Marco and Danielle S. Futterman in support thereof and exhibits attached thereto and this Order shall remain sealed until the Financial Institutions and Third Party Service Providers comply with **Paragraphs I(B)-(C), III(A) and V(C)** of this Order.

**SO ORDERED.**

SIGNED this _____day of _____, 2021, at _____.m.

_____
HON. LEWIS J. LIMAN
UNITED STATES DISTRICT JUDGE