USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/14/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
 :
ALLSTAR MARKETING GROUP, LLC,             :
 :
                    Plaintiff,             :      21-cv-5856 (LJL)
 :
      -v-             :
 :      OPINION & ORDER
ALLSTAR_PLACE, et al.,             :
 :
                    Defendants.             :
 :
-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

    Before the Court is Plaintiff's application for a preliminary injunction. Plaintiff filed this action under seal on July 8, 2021. On August 5, 2021, the Court entered a Temporary Restraining Order ("TRO"). The Court held a show cause hearing on August 18, 2021, and a further hearing regarding the proposed preliminary injunction on September 2, 2021; no Defendants appeared at either hearing.

    Plaintiff is a developer, producer, marketer, and distributor of consumer products, including the product Happy Nappers. Defendants are 48 different merchants on the eBay online marketplace platform. Plaintiff alleges that each Defendant has offered for sale and sold counterfeit or infringing Happy Nappers products. Plaintiff seeks this preliminary injunction extending the injunctive relief previously granted in the TRO, pursuant to Federal Rule of Civil Procedure 65. For the reasons below, Plaintiff's application is granted, but the Court modifies the proposed preliminary injunction such that third party service providers such as eBay, Inc. ("eBay") are not restrained from providing services to Defendants' User Accounts and Merchant Storefronts for non-infringing listings.

A. Entitlement to Preliminary Injunctive Relief

"A party seeking a preliminary injunction must demonstrate: (1) 'a likelihood of success on the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor'; (2) a likelihood of 'irreparable injury in the absence of an injunction'; (3) that 'the balance of hardships tips in the plaintiff's favor'; and (4) that the 'public interest would not be disserved' by the issuance of an injunction." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (alteration in original) (quoting *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010)). "A preliminary injunction is an extraordinary remedy never awarded as of right. In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008) (quoting *Amoco Production Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987)).

Plaintiff's complaint, supported by the evidence submitted by Plaintiff in connection with its application for a TRO and preliminary injunction, establishes that Plaintiff is likely to prevail on its trademark and copyright claims. In particular, that evidence includes certificates of registration for U.S. Copyrights for the Happy Nappers Works and U.S. Trademarks for the Happy Nappers Marks, as well as a sworn declaration by Jennifer De Marco describing the Happy Nappers products and indicating that Plaintiff's counsel "confirmed that each Defendant is using one or more of the Happy Nappers Works and/or Happy Nappers Marks in the Infringing Listings without authorization and that the products that each Defendant offers for sale using and featuring virtually identical copies of the Happy Nappers Works and/or Happy Nappers Marks are, in fact, Counterfeit Products," and that Defendants were not authorized to

distribute those products or use the Happy Nappers Works and/or Happy Nappers Marks. Declaration of Jennifer De Marco ("De Marco Decl.") ¶ 20-21.

      To prevail on a copyright infringement claim, a plaintiff must demonstrate: "(i) ownership of a valid copyright; and (ii) unauthorized copying of the copyrighted work." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).  A certificate of registration from the United States Register of Copyrights constitutes *prima facie* evidence of the valid ownership of a copyright.  *Id.*; *see* 17 U.S.C. § 410(c).  To satisfy the second element, a plaintiff must demonstrate that: "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's [work]."  *Yurman Design, Inc. v. PAJ Inc.*, 262 F.3d 101, 110 (2d Cir. 2001).  A plaintiff may demonstrate actual copying "either by direct or indirect evidence," but because "direct evidence of copying is seldom available, a plaintiff may establish copying circumstantially," *Jorgensen*, 351 F.3d at 51, such as with "proof that the defendants had access to the copyrighted work and similarities that are probative of copying between the works," *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999).  To prevail on trademark counterfeiting and infringement claims, a plaintiff must establish that it has a valid mark entitled to protection and that the defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods. *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003).  To establish the former, a plaintiff may provide a certificate of registration with the U.S. Patent and Trademark Office for the mark as *prima facie* evidence of its validity. *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt, Inc.*, 192 F.3d 337, 345 (2d Cir. 1999).  Plaintiff may establish the latter—likelihood of confusion—through the eight factors set forth in *Polaroid v.*

*Polarad Elecs. Corp*, 287 F.3d 492, 495 (2d Cir. 1961): the strength of plaintiff's mark, the degree of similarity between the two marks, the proximity of the parties' areas of commerce, the likelihood that plaintiff will bridge the gap separating their areas of activity, actual consumer confusion, whether defendant acted in bad faith or was otherwise reprehensible in adopting the mark, the quality of defendant's product, and the sophistication of the relevant consumer group. *See also Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d Cir. 2016). However, where counterfeit items are involved, the court "need not undertake a factor-by-factor analysis under *Polaroid* because counterfeits, by their very nature, cause confusion." *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003); *see also WowWee Grp.*, 2019 WL 1375470, at *7. The certificates of registration provided by Plaintiff establish the first element—ownership—of both their copyright and trademark claims; the complaint, declarations, and exhibits establish the second element of both claims.

Plaintiff has further demonstrated irreparable harm in the absence of a preliminary injunction. *See U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 540 (S.D.N.Y. 2011) ("Irreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark . . . because loss of control over one's reputation is neither calculable nor precisely compensable." (internal quotation marks omitted) (quoting *N.Y.C. Triathalon, LLC v. NYC Triathalon Club, Inc.*, 704 F. Supp. 2d 305, 343 (S.D.N.Y. 2010))); 15 U.S.C. § 1116(a) (2020) ("A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for permanent injunction or upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order."). Plaintiff has also

demonstrated that the balance of hardships favors Plaintiff, so long as the scope of the injunction is such that "[a]ny harm to Defendants would be only the loss of Defendants' ability to continue to offer their Counterfeit Products for sale, or, in other words, the loss of the benefit of being allowed to continue to unfairly profit from their illegal and infringing activities." Mem. of Law in Support of Plaintiff's Application, at 18.  Last, issuing this injunction would serve the public interest, as "the public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown quality and origin." *N.Y.C. Triathalon*, 704 F. Supp. 2d at 344.

As such, Plaintiff is entitled to a preliminary injunction for the duration of this litigation.

B. Scope of the Injunction

"Injunctive relief should be narrowly tailored to fit specific legal violations" and "an injunction should not impose unnecessary burdens on lawful activity." *Waldman Pub. Corp. v. Landoll, Inc.*, 43 F.3d 775, 785 (2d Cir. 1994).  "An injunction is overbroad when it seeks to restrain the defendants from engaging in legal conduct, or from engaging in illegal conduct that was not fairly the subject of litigation." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 145 (2d Cir. 2011); *see also Victornox AG v. B&F Sys., Inc.*, 709 F. App'x 44, 51 (2d Cir. 2017) (holding that even though a "party who has once infringed a trademark may be required to suffer a position less advantageous than that of an innocent party, an injunction must nonetheless be narrowly tailored to fit specific legal violations because the district court should not impose unnecessary burdens on lawful activity" (internal quotation marks and citations omitted)).

In one respect, Plaintiff's proposed preliminary injunction would violate this fundamental precept.  The proposed preliminary injunction would restrain third party service providers like eBay from providing *any* services to Defendants' User Accounts and Merchant Storefronts for

the pendency of this litigation. It thus would prevent those Defendants from employing the User Accounts and Merchant Storefronts not only to sell the infringing products that are the subject of this litigation but to sell any other products, including products that are non-infringing. It would deprive Defendants of that vehicle for selling their products and deprive consumers of the ability to purchase Defendants' non-infringing products.

Plaintiff's proposed preliminary injunction sweeps too broadly. It would prevent Defendants from using their Merchant Storefronts for lawful activity wholly unrelated to this litigation. The Court would not order a brick-and-mortar store to shut down simply on the basis that some of the products it has sold (but not all) infringe a copyright or trademark. Such an order would deprive the store of the ability to sell and customers of the ability to buy a wide range of product simply because the sale of some of the products is unlawful. For the same reasons, Plaintiff has not made out a case that the Court should shut down what are, in essence, virtual stores.

At the September 2, 2021 hearing, the Court asked Plaintiff several times if it has evidence that the User Accounts and Merchant Storefronts are used primarily to sell counterfeit or infringing products; Plaintiff responded that it does not have such evidence. Plaintiff conceded that it does not know what other products are offered on Defendants' User Accounts and Merchant Storefronts, and further that it cannot at this point establish from Defendants' financial records that the bulk of Defendants' business and profits generated from the Storefronts were from the sale of infringing products. *See* Transcript of September 2, 2021 Hearing ("Hr'g Tr."), 6:14-23, 18:5-20. As such, there is no evidence that the proposed injunction is narrowly tailored to address only the specific legal violations.

Plaintiff argues that injunctive relief shutting down the User Accounts and Merchant

Storefronts is necessary because, in the absence of such an order, Plaintiff would be at risk of harm because Defendants would continue to infringe Plaintiff's copyrights and trademarks in Happy Nappers. In response to the Court's request at the August 18, 2021 show cause hearing, Plaintiff has submitted a supplemental memorandum of law ("MOL") explaining why it believes this relief is necessary, along with a Declaration of Bryce Baker ("Baker Decl."), a Director of Litigation for eBay, and a Supplemental Declaration of Danielle S. Futterman ("Futterman Decl."), counsel for Plaintiff. Plaintiff argues that "absent a restraint of Defendant's Merchant Storefronts," Defendants can simply re-list the counterfeit or infringing products with different text and images. MOL at 2-3.

The declarations do not establish that the proposed restraint is narrowly tailored. Plaintiff's requested relief is based on the presumption that Defendants not simply can but will relist the counterfeit and infringing products and will not honor an order not to sell, market . . . any infringing products including on the Merchant Storefronts or with User Accounts. In the absence of such presumption, the requested relief lacks any justification. There would be no need for a broad injunction prohibiting all sales and marketing on the Merchant Storefronts or with the User Accounts if the Merchant Storefronts and User Accounts were not used to infringe Plaintiff's copyrights and trademarks. But the law does not presume that a legal duty will be violated. In order to obtain equitable relief, Plaintiff must submit evidence of an actual or threatened violation of law, not just the hypothetical risk that the law will be violated.

Plaintiff has not done so. Plaintiff asserts that "historically, merchants on e-commerce platforms, like eBay have notoriously re-listed Counterfeit Products on their Merchant Storefronts that have been taken down." Futterman Decl. ¶ 11. Plaintiff presents no evidence that the Defendants or entities like these Defendants have violated other similar court orders or

are likely to violate this Court's Order in the absence of the proposed broad restraint. Indeed, when the Court inquired at the September 2 Hearing, *see* Hr'g Tr., 18:25-19:11, Plaintiff "recognize[d] that it is likely that some portion of these Defendants would *not* relist the infringing products even if their Merchant Storefronts remained active. *See* Hr'g Tr., 13:1-6 ("[E]ven if the Court did not restrain the merchant storefront . . . I'm sure there would be defendants that would not relist the counterfeit products. I'm not saying that every single defendant would. It's just, in our experience, there are many defendants who do."). With respect to those defendants who do relist, the Baker declaration indicates the eBay can "warn sellers not to re-list any items that incorporate the trademarks at issue, and immediately terminate sellers who do," Baker Decl. ¶ 4(b). If that is so, then Plaintiff can obtain relief from eBay if any particular Defendant fails to honor the Court order. Admittedly, there would be some burden on Plaintiff in ensuring that eBay does terminate a recalcitrant Defendant. Plaintiff would have to monitor the Merchant Storefronts, much as they did to bring this lawsuit, but this time in order to ensure that Defendants are not re-listing the infringing products and to ensure that, if they do so, the Merchant Storefronts are shut down. MOL at 2-3. However, Plaintiff has not demonstrated that such burden would be particularly onerous or, more to the point, that Plaintiff need not be required to undertake it before the Court takes the extraordinary step of shutting down a merchant storefront for the sale of both infringing and non-infringing products.

      Furthermore, the Futterman declaration points out that "after Infringing Listings have been restrained, merchants on e-commerce platforms, like eBay, have also opened new Merchant Storefronts on the platform, offering Counterfeit Products for sale." Futterman Decl. ¶ 12. If that is so, the proposed restraint will not prevent the platforms from doing so, as Plaintiff conceded at the September 2, 2021 hearing. *See* Hr'g Tr., 11:15-12:8. To the contrary, it might

just encourage the creation of new User Accounts and Merchant Storefronts as a means to evade the Court's Order. The risk of "whack-a-mole" that Plaintiff seeks to avoid, MOL at 3, thus remains present even under the broad preliminary injunction Plaintiff requests.

Plaintiff argues that none of the Defendants in this action have appeared to challenge the proposed preliminary injunction, including the proposed scope of the restraint on their Merchant Storefronts. However, "[a] defendant is always free to ignore the judicial proceedings [and] risk a default judgment." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982). In context of a default judgment, failure to appear means that "a plaintiff can obtain from a default judgment relief equivalent to but not greater than that it would obtain in a contested proceeding assuming it prevailed on all of its factual allegations." *Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 367 (S.D.N.Y. 2020). A similar principle is instructive here—Defendants' failure to appear in this action represents a choice they entitled to make, and that choice should not result in entry of relief for Plaintiff greater than that which the Court would find appropriate in a contested proceeding.

The Court is not unsympathetic to Plaintiff's concern. Plaintiff has been the victim of infringing conduct by a number of Defendants and there is a risk that even if the Court enjoins Defendants from engaging in their unlawful conduct, Defendants will ignore that Order. But on this record, that risk is purely speculative. Plaintiff was offered the opportunity to present evidence to support the breadth of the proposed injunctive relief. It has failed to do so. To the extent that Plaintiff seeks an order closing down Defendants' User Accounts and Merchant Storefronts regardless of the products that are now sold on those Storefronts, the motion is denied without prejudice.

Plaintiff is directed to submit an amended proposed preliminary injunction by October

15, 2021 that complies with the reasoning and scope outlined above.

    SO ORDERED.

Dated: October 14, 2021
       New York, New York

                                        LEWIS J. LIMAN
                                   United States District Judge