UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
:
ALLSTAR MARKETING GROUP, LLC, :
:
Plaintiffs, :
: 21-cv-5856 (LJL)
-v- :
: MEMORANDUM AND
ALLSTAR_PLACE, AMGARI66, et al., : ORDER
:
Defendants. :
:
-----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/1/2023

LEWIS J. LIMAN, United States District Judge:

Plaintiff Allstar Marketing Group, LLC ("Plaintiff") brings this action against thirty-nine individuals and/or businesses who, using accounts with an online marketplace platform ("User Accounts"), manufacture, import, export, advertise, market, promote, distribute, display, offer for sale and/or otherwise deal in products to United States consumers, including those located in the State of New York (collectively, "Defendants"). See Dkt. No. 14 ("Complaint" or "Compl."). Plaintiff alleges trademark infringement, trademark counterfeiting, false designation of origin, passing off and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114, 1116(d), 1117(b)–(c), 1125; copyright infringement under the Copyright Act, 17 U.S.C. § 501(a); and related claims under state and common law. See generally Compl. Defendants have not appeared in the action.

Plaintiff now moves for default judgment and a permanent injunction against Defendants pursuant to Federal Rule of Civil Procedure 55(b)(2). Dkt. No. 48. Plaintiff also seeks individual statutory damages awards pursuant to 15 U.S.C. § 1117(c) against each of the thirty-nine defaulting defendants, and service of asset restraining notices pursuant to CPLR § 5222.

For the following reasons, the motion is denied without prejudice to renewal.

## BACKGROUND

By defaulting, Defendants have admitted the well-pleaded factual allegations of the Complaint. *See City of New York v. Mickalis Pawn Shop, LLC* 645 F.3d 114,137 (2d Cir. 2011).

Plaintiff is a leading developer, producer, marketer, and distributor of quality, innovative consumer products that it promotes and sells throughout the United States and the world. One of Plaintiff's most popular and successful products is Happy Nappers, a soft plush pillow toy that when unzipped, expands into a comfy sleep sack. Compl. ¶ 8. The Happy Nappers Products typically retail for between $39.99 to $120.99. *Id.* ¶ 9.

Plaintiff is a limited liability company with its principal place of business in New York. *Id.* ¶ 5. Plaintiff sells its Happy Nappers Products through major U.S. retailers such as Wal-Mart, Target and Bed Bath & Beyond, as well as through its retail customers' websites and a network of international distributors, among other channels of trade. *Id.* ¶ 7. Plaintiff was granted the exclusive license from Jay At Play International Hong Kong Limited d/b/a Jay At Play ("Jay At Play") to use the Happy Nappers Marks including U.S. Trademark Registrations for "HAPPY NAPPERS" for goods in Class 20, 24 and 28. *Id.* ¶ 10. Plaintiff was also granted the exclusive license to use Happy Nappers Works related to the Happy Nappers Products. *Id.* ¶ 12. The success of the Happy Nappers Products is due in part to the marketing and promotional efforts of Plaintiff, including advertising and promotion through television, retailer websites, print and Internet-based advertising. *Id.* ¶ 14. Plaintiff's success is also due to its use of high-quality designs, materials, and processes in making Happy Nappers Products. *Id.* ¶ 15. Additionally, Plaintiff owes a substantial amount of the success of the Happy Nappers Products to its consumers and the word-of-mouth buzz that its consumers have generated. *Id.* ¶ 16.

Due to Plaintiff's efforts, the public has become familiar with the Happy Nappers Products and associates them exclusively with Plaintiff. *Id.* ¶ 17. As a result of this association, Plaintiff has acquired a valuable reputation and goodwill among the public. *Id.* ¶ 18. No one other than Jay At Play, Plaintiff, and Plaintiff's authorized licensees and distributors are authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the Happy Nappers Marks or Happy Nappers Works. *Id.* ¶ 19.

Defendants use accounts on an online marketplace and e-commerce platform, eBay.com ("eBay"), that allows manufacturers and other third-party merchants, such as Defendants, to advertise, distribute, offer for sale, sell, and ship retail products originating from China directly to consumers worldwide and specifically to consumers residing in the United States, including New York. *Id.* ¶ 20. eBay is one of the most popular e-commerce platforms in the world and is currently the sixth most popular website in the United States. *Id.* ¶ 21.

The Complaint broadly accuses each Defendant of violations in connection with selling or offering for sale "Counterfeit Products": trademark counterfeiting, trademark infringement, false designation of origin, passing off, and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114, 1116(d), 1117(b)– (c), 1125; copyright infringement under the Copyright Act, 17 U.S.C. §501(a); and unfair competition under New York common law. Compl. ¶ 1.

Counterfeit Products are defined broadly to be products bearing or used in connection with the Happy Nappers Marks and/or Happy Nappers Works, and/or products in packaging and/or containing labels and/or hang tags bearing the Happy Nappers Marks and/or Happy Nappers Works, and/or bearing or used in connection with marks and/or artwork that is confusingly or substantially similar to the Happy Nappers Marks and/or artwork that is confusingly or substantially similar to the Happy Nappers Marks and/or Happy Nappers Works

and/or products that are substantially similar to Happy Nappers Products.  Compl. at ii.  Defendants' Counterfeit Products are nearly indistinguishable from Plaintiff's Happy Nappers Products, only with minor variations that no ordinary consumer would recognize.  *Id.* ¶ 32.

Plaintiff alleges that through their user accounts and merchant storefronts, Defendants offer for sale and/or sell Counterfeit Products and target and ship such products to consumers located in the United States, including New York.  *Id.* ¶ 25.  Plaintiff further alleges that Defendant accepts payment for Counterfeit Products in U.S. Dollars through various payment processing services and that each Defendant provides shipping of Counterfeit Products into the United States, including to customers located in New York, and/or has actually shipped Counterfeit Products into the United States, including to customers located in New York.  *Id.* ¶ 34.  Defendants are not, and have never been, authorized by Plaintiff or any of its authorized agents, authorized licensees, or authorized distributors to sell or copy Happy Nappers Products or to use the Happy Nappers Marks or Happy Nappers Works.  *Id.* ¶ 31.

The Complaint provides helpful illustrations of three particular Counterfeit Products offered for sale by three of the Defendants.  *Id.* ¶¶ 35–37.  The Complaint also attaches as Exhibit D listings for Counterfeit Products for each of the Defendants.  *Id.* ¶ 34, Ex. D.  Plaintiff retained Epstein Drangel to investigate and research manufacturers, wholesalers, retailers and/or other merchants offering for sale and/or selling Counterfeit Products.  *Id.* ¶ 29.  Epstein Drangel identified Defendants in this action and verified that Defendants offer for sale Counterfeit Products and that each Defendant provides shipping to the New York address it provided.  *Id.* ¶ 33, Ex. D.

**PROCEDURAL HISTORY**

Plaintiff initiated this action by sealed complaint on July 8, 2021.  Dkt. No. 49 ¶ 9 ("Futterman Aff.").  The Court held an *ex parte* hearing on Plaintiff's application for a

Temporary Restraining Order ("TRO") on July 9, 2021 and entered the TRO, under seal, on July 14, 2021. Dkt. No. 26. Ultimately, this TRO remained under seal and was not consequently served. Dkt. No. 27. Plaintiff's renewed application for a TRO was granted on August 5, 2021. Futterman Aff. ¶ 11. Pursuant to the alternative methods of service authorized by the TRO, Plaintiff served all Defendants (except baby_home29) on August 15, 2021 with the Summons, Complaint, TRO, and all documents filed in support of Plaintiff's application. *Id.* ¶ 13. Defendant baby_home29 was subsequently served on August, 18, 2021. *Id.* On September 5, 2021, the Court held a Preliminary Injunction Show Cause Hearing, at which no Defendants appeared. *Id.* ¶ 15. On October 14, 2021, the Court entered a Preliminary Injunction Order against all Defendants mirroring the terms of the TRO and extending through the pendency of the action. *Id.* ¶ 16.

On June 1, 2022, Plaintiff filed an application for a Clerk's Certificate of Default against Defendants in the action; and on the same day, the Clerk of the Court entered a Certificate of Default against Defendants. *Id.* ¶¶ 18, 19, Ex. D. On June 3, 2022, Plaintiff moved for default judgment and a permanent injunction against Defendants. Dkt. No. 48.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets forth a two-step procedure to be followed for the entry of judgment against a party who fails to appear: the entry of a default and the entry of a default judgment. *See New York v. Green*, 420 F.3d 99, 104 (2d. Cir. 2005).

The first step, entry of a default, simply "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *Mickalis Pawn Shop, LLC*, 645 F.3d at 128; *see also* Fed. R. Civ. P. 55(a). The second step, entry of a default judgment, "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is

entitled, to the extent permitted" by the pleadings. *Mickalis Pawn Shop*, 645 F.3d at 128; *see also* Fed. R. Civ. P. 55(b). Whether entry of default judgment at the second step is appropriate depends upon whether the well-pleaded allegations against the defaulting party establish liability as a matter of law. *See Mickalis Pawn Shop*, 645 F.3d at 137.

While a defendant who defaults admits the well-pleaded factual allegations in a complaint, because a party in default does not admit conclusions of law, "a district court need not agree that the alleged facts constitute a valid cause of action." *Id*. (internal quotation marks and citation omitted); *see also Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 367 (S.D.N.Y. 2020) ("The essence of Fed. R. Civ. P. 55 is that a plaintiff can obtain from a default judgment relief equivalent to but not greater than it would obtain in a contested proceeding assuming it prevailed on all of its factual allegations."). Therefore, this Court is "required to determine whether the [plaintiff's] allegations establish the [defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). A party later challenging the entry of a default judgment must satisfy the "good cause shown" standard in Federal Rule of Civil Procedure 55(c), which "requires a court to weigh (1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party." *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 454–55 (2d Cir. 2013).

The legal sufficiency of a non-defaulting party's claims "is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the movant's favor." *WowWee Grp. Ltd. v. Meirly*, 2019 WL 1375470, at *5 (S.D.N.Y. Mar. 27, 2019). A default judgment entered on well-pleaded allegations does not reach the issue of damages, and a plaintiff "must therefore substantiate [his] claim for damages

with evidence to prove the extent of those damages." *Hood v. Ascent Med. Corp.*, 2016 WL 1366920, at *15 (S.D.N.Y. Mar. 3, 2016), *report and recommendation adopted,* 2016 WL 3453656 (S.D.N.Y. June 20, 2016), *aff'd* 691 F. App'x 8 (2d Cir. 2017) (summary order).

To determine the amount of damages that should be awarded on a default judgment, Federal Rule of Civil Procedure 55(b)(2) "leaves the decision of whether a hearing is necessary to the discretion of the district court." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012). And "[w]here, on a damages inquest, the plaintiff makes a damages submission and the defaulting defendant makes no submission in opposition and does not request a hearing, the court may determine the adequacy of the plaintiff's damages claim based on its submitted proofs." *Id*.

## DISCUSSION

In its motion for default judgment, Plaintiff states that it only seeks default on its first and second causes of action, *i.e.*, trademark counterfeiting and infringement in violation of the Lanham Act, 15 U.S.C. §§ 1114, but does not waive the other, remaining causes of action. Futterman Aff. ¶ 8 n.2.

"Section 32(1) of the Act, 15 U.S.C. § 1114(1)—at issue here—protects only registered trademarks." *Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 72 (2d Cir. 2013). It provides a cause of action against any person who "use[s] in commerce any . . . imitation of a registered mark . . . likely to cause confusion, or to cause mistake, or to deceive." *Id.* (quoting 15 U.S.C. § 1114(1)). However, this cause of action is available only to "registrants" of the relevant trademark, "a term the Act defines as embracing the actual registrant's legal representatives, predecessors, successors and assigns." *Id.* (quoting 15 U.S.C. § 1127). It is not available to a licensee or an exclusive licensee of a trademark unless that license amounts to "an assignment to establish entitlement to sue under Section 32(1)." *Id.* at 78. The

Second Circuit has stated that Congress could have easily included "licensee" or "exclusive licensee" among the enumerated terms used to define "registrant" in 15 U.S.C. § 1127, but Congress "instead [chose] to limit standing to parties having a more specific set of interests in the registered mark." *Id.*

Plaintiff does not own the Happy Nappers Marks and Works nor does it claim to be the actual registrant's legal representative, predecessor, successor, or assign. Instead, it alleges that it was granted the exclusive license to use the Happy Nappers Marks and Works from registrant Jay At Play. Compl. ¶ 10. Accordingly, under the definition of "registrant" included in 15 U.S.C. § 1127, Plaintiff only has standing to bring its trademark infringement claims if Plaintiff shows that its "'license' amounts, in fact, to an assignment to establish entitlement to sue under Section 32(1)." *SPI Spirits Ltd.*, 726 F.3d at 78.

Plaintiff does not assert in its Complaint or its motion for a default judgment (and the supporting papers) that it is an assignee, nor does it plead sufficient allegations for the Court to reach this conclusion. "[A]n exclusive licensee only has standing if the licensing agreement grants the licensee a property interest in the mark or otherwise assigns to the licensee the registrant-licensor's ownership rights." *Telebrands Corp. v. Del Lab'ys, Inc.*, 719 F. Supp. 2d 283, 293 (S.D.N.Y. 2010) (internal quotations omitted). Plaintiff fails to mention or attach its licensing agreement for the Happy Nappers Marks or Works in its Complaint, so the Court is unable to determine from Plaintiff's pleadings the true nature and scope of its licensing agreement with the trademark registrant. *See Nespresso USA, Inc., v. Peet's Coffee, Inc.*, 2023 WL 374980, at *6 (S.D.N.Y. Jan. 24, 2023). Plaintiff also did not address this issue in its motion for default judgment.

Other than the conclusory allegations that Plaintiff is an exclusive licensee of the Happy Nappers Marks and Works, the Complaint does not provide allegations in support of Plaintiff's right to enforce the Happy Nappers trademark. *See N. Food I/E, Inc. v. Apollo Food Int'l Inc.*, 2020 WL 9607108, at *7 (E.D.N.Y. Aug. 14, 2020). Plaintiff Allstar Marketing admits it is not the owner or registrant of the Happy Nappers Marks and Works, nor has it demonstrated that it is the assignee, predecessor, successor, or legal representative of the registrant. Therefore, Plaintiff has not established that it has standing to bring its claims under 15 U.S.C § 1114(1) and, accordingly, has not established entitlement to a default judgment in its favors on its first two causes of action.

In addition to 15 U.S.C. § 1114, Plaintiff also invokes 15 U.S.C. §§ 1116(d), 1117(b) – (c) in support of its first two causes of action. Section 1116 does not "provide independent claims that affect the standing analysis" and instead "empowers a court to enter an injunction to prevent further infringement against a trademark." *Sream Inc. v. Saakshi Enterprises Inc.*, 2017 WL 2633510, at *4 (E.D.N.Y. June 15, 2017). Section 1117(b)-(c) addresses damages calculations and also does not provide further standing upon which Plaintiff can rely. 15 U.S.C. § 1117(b)-(c).

## CONCLUSION

The motion for default judgment is DENIED without prejudice to renewal. Plaintiff may either file an amended complaint with allegations demonstrating that they are the legal representative, predecessor, successor or assign of the Happy Nappers Marks and Works or Plaintiff may move for a default judgment on the basis of causes of action three to five in its Complaint. Plaintiff should file an amended complaint or submit a new motion for default judgment within 30 days of the date of this memorandum and order. If Plaintiff does not amend

or submit a new motion for default judgment, it shall show cause within 30 days of the date of this memorandum and order why the Complaint should not be dismissed for failure to prosecute.

SO ORDERED.

Dated: February 1, 2023
      New York, New York

                                        LEWIS J. LIMAN
                                  United States District Judge